CAMPBELL, Acting Chief Judge.
Appellant, BankAmerica, challenges the final judgment on the pleadings entered by the trial court in favor of appellee, Allstate. We reverse.
In considering a motion for judgment on the pleadings, all material allegations of the party against whom judgment on the pleadings is sought are to be taken as true and all those of the moving party which have been denied are taken as false. A motion for judgment on the pleadings may be granted only if the moving party is clearly entitled to judgment as a matter of law. See 4100 5th Avenue Corp. v. PHL/Millwork Div., Inc., 722 So.2d 218 (Fla. 2d DCA 1998); Farag v. National Databank Subscriptions, Inc., 448 So.2d 1098 (Fla. 2d DCA 1984). In granting Allstate a judgment on the pleadings, it is apparent, as we will explain, that the trial court was persuaded to misconstrue and misapply Airvac, Inc. v. Ranger Ins. Co., 266 So.2d 178 (Fla. 4th DCA 1972).
Judgment was entered on the basis of the allegations of BankAmerica’s second amended complaint. The essential allegations of BankAmerica’s pleadings, which for the purpose of Allstate’s motion for judgment on the pleadings must be accepted as true, are as follows:
(1) James Barrow was the unmarried, adult son of Ronnie and Linda Barrow.
(2) On or about June 28, 1994, James Barrow bought a recreational vehicle described as: 1994 Southwind F/35P Recreational Vehicle (Serial No. FCMF53G3R3B042763).
(3) BankAmerica was given a purchase money security interest in the vehicle by James Barrow and provided the purchase money financing for the acquisition thereof.
(4) Pursuant to the terms of said security agreement, Barrow was required to maintain property insurance against physical damage to protect BankAmeri-ca’s security interest in said vehicle.
(5) About January 1995, due to James Barrow’s financial difficulties, his parents, ■ Ronnie and Linda Barrow, with James Barrow’s consent, took primary responsibility for the recreational vehicle and began making the payments due BankAmerica. Ronnie and Linda Barrow had unfettered access to the recreational vehicle, used the recreational vehicle and paid for the maintenance of the recreational vehicle.
*1220 (6) In order to insure BankAmerica’s lienhold interest in the vehicle, Ronnie and Linda Barrow contacted Allstate, with whom they had insured their home and several vehicles for many years.
(7) With full knowledge that James Barrow was the title holder to the recreational vehicle, Allstate issued a policy in the name of Ronnie and Linda Barrow with BankAmerica (under its former trade name of Security Pacific Financial Services) named as a lien holder in the loss payable clause of the policy.
(8) The loss payable clause of the policy in question insures the interest of the named lien holder and provides that the insurance of the secured party “will not be voided ... by any change in title or ownership” of the vehicle.
(9) Allstate charged and collected from Ronnie and Linda Barrow the premiums for said policy of insurance.
(10) Allstate knew, or should have known, that said declaration page of the policy was to be provided to the lien holder, and the lien holder would rely thereupon as proof of insurance covering the lien holder’s interest in the personal property.
(11) In or about August 1995, the recreational vehicle was destroyed by fire.
(12) In or about December 1995, James Barrow died leaving Ronnie and Linda Barrow as his sole survivors.
(13) In or about April 1996, BankAmeri-ca made demand upon Allstate for the payoff of the indebtedness under the purchase money security agreement.
(14) Allstate has failed and refused to pay BankAmerica, claiming that Ronnie and Linda Barrow did not have an insurable interest in the recreational vehicle.
(15) BankAmerica, as a lien holder named in the loss payable clause, had an insurable interest in the recreational vehicle insured at the time of loss due to an amount owed on the indebtedness to BankAmerica by James Barrow in excess of $53,000. The policy of insurance with Allstate was procured for the benefit of BankAmerica.
The trial judge rendered judgment on the pleadings for Allstate, reasoning that under Airvac, since Ronnie and Linda Barrow as the named policy holders had no insurable interest in the recreational vehicle, BankAmerica as the named lien holder in the loss payable clause could not recover under the policy. We disagree.
Airvac involved a purported purchaser (Airvac, Inc.) of an aircraft who borrowed money for the purchase from a third party lender (Kirohn). Airvac, Inc. executed a chattel mortgage on the aircraft in favor of Kirohn. Airvac, Inc. then purchased from Ranger Insurance Company (Ranger) an insurance policy on the aircraft which in part contained a “breach of warranty” endorsement protecting Kirohn’s interest as a lien holder on the aircraft. The “breach of warranty” endorsement in Airvac is similar to the “loss payable clause” contained in the Barrows’ policy securing BankAmerica’s lien on James Barrow’s recreational vehicle. Both provided that the policy would not be invalidated as to the lien holder’s interest by any act or neglect of the named insured nor by any change in title or ownership of the insured property. A major distinction in Airvac is that the named insured policy holder (Airvac, Inc.) was both the purported owner of the aircraft and also the mortgagor on the chattel mortgage to Kirohn.
In the case before us, the named insureds (Ronnie and Linda Barrow) admittedly did not have record title to the insured vehicle, but neither were they the mortgagors on the purchase money lien granted to BankAmerica. The mortgagor on the lien to BankAmerica was James Barrow, who was in fact the record titleholder of the recreational vehicle. Therefore, as far as the pleadings before us reveal, BankAmerica was the record lien holder of a valid lien executed by the record titleholder to the recreational vehicle. If these facts as alleged in BankAm-erica’s pleadings are accepted as true, as *1221 they must be on a motion for judgment on the pleadings, then BankAmerica had an insurable interest in the recreational vehicle. Therein lies the distinction between this case and Airvac.
The issue in both cases is whether the party sought to be insured as a lien holder has in fact an insurable interest. In other words, does that party hold a valid hen on the property insured? If the named lien holder under the loss payable .clause has a valid lien and thereby has an insurable interest, it is not necessary that the named policy holder also have an insurable interest. In Airvac, the validity of lien holder Kirohn’s claim rested upon whether the mortgagor/policy holder (Airvac, Inc.) had a sufficient ownership interest in the aircraft insured so as to create a valid hen in Kirohn. In Airvac, the named insured, the mortgagor, and the purported owner of the property was Airvac, Inc. So, the issue in Airvac simply stated was did Airvac, Inc. have a sufficient interest in the property so as to create an insurable interest in Kirohn.
In this appeal, the named insureds (policy holders) were Ronnie and Linda Barrow. However, the mortgagor of the recreational vehicle to BankAmerica and the purported record title owner of the recreational vehicle was James Barrow. Thus, even under the analysis of Airvac, the issue before us and the issue on the motion for judgment on the pleadings should properly be not whether Ronnie and Linda Barrow had an insurable interest in the recreational vehicle so as to enable Bank-America to recover for its lien, but whether James Barrow had an ownership interest such that he created in BankAmerica an insurable interest by executing in their favor a lien on the vehicle. On the face of the pleadings it appears not only that James Barrow was the owner of the vehicle, but also that Allstate knew that James Barrow was the owner of the vehicle and therefore had a sufficient ownership interest so that his lien to BankAmerica granted them an insurable interest subject to protection under the loss payable clause of Allstate’s policy.
Section 627.405, Florida Statutes (1995), defines the term “insurable interest” for purposes of property insurance. That section does not require that the purchaser of insurance necessarily have an “insurable interest” in the property covered by the insurance policy being purchased. It provides instead that no contract for property insurance shall be enforceable “except for the benefit of persons having an insurable interest in the things insured at the time of the loss.”
Allstate’s policy purchased by Ronnie and Linda Barrow is not sought to be enforced as to any interest of Ronnie and Linda Barrow. It is sought to be enforced only as to BankAmerica who under the existing pleadings appears to have an “insurable interest” as defined in section 627.405(2)(3). Section 627.405 provides as follows:
627.405. Insurable interest; property.-
(1) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
(2) ‘Insurable interest’ as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.
(3) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof.
Reversed and remanded for proceedings consistent herewith.
GREEN and SALCINES, JJ., Concur.